No. 26-1783

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

DAVID M. SCANLAN, New Hampshire Secretary of State; STATE OF NEW HAMPSHIRE; NEAL KURK; ROBERT PERRY; LOUISE SPENCER; CHRISTOPHER COLE,

Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

# REPLY BRIEF FOR THE UNITED STATES AS APPELLANT

JESUS A. OSETE
Acting Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3803

# TABLE OF CONTENTS

**PAGE**


INTRODUCTION ........ 1

ARGUMENT ........ 2

I. The DOJ's demand for an electronic, unredacted copy of New Hampshire's SVRL satisfied Title III's requirements. ........ 2

A. New Hampshire's SVRL is a record or paper that Title III requires the State to retain and preserve and to produce upon the Attorney General's demand ........ 3

B. Courts play a limited role in assessing the Attorney General's demand under Title III........ 12

C. The DOJ provided a valid basis for its demand ........ 16

D. The DOJ's stated purpose of ascertaining New Hampshire's compliance with HAVA was sufficient ........ 19

II. The DOJ's demand for an electronic, unredacted copy of New Hampshire's SVRL does not violate federal or state privacy laws ........ 26

A. The DOJ's demand complied with the Privacy Act ........ 26

B. Federal law preempts any contrary New Hampshire privacy law........ 29

CONCLUSION ........ 32

**TABLE OF CONTENTS (continued):**

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**CASES:** **PAGE**

*American Oversight v. United States Dep't of Just.*, 45 F.4th 579 (2d Cir. 2022) ........ 28

*Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020) ........ 31

*Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021) ........ 29

*Bryan v. United States*, 524 U.S. 184 (1998) ........ 11

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (per curiam) ........ 16

*Common Cause v. United States Dep't of Just.*, No. 26-1352 (SLS), 2026 WL 3033772 (D.D.C. Oct. 9, 2026) ........ 2, 28

*Department of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42 (2024) ........ 21

*Department of Homeland Sec. v. League of Women Voters*, No. 26A308, 2026 WL 2879700 (S. Ct. Sept. 25, 2026) (per curiam) ........ 26

*Endicott Johnson Corp. v. Perkins*, 317 U.S. 501 (1943) ........ 20

*Fischer v. United States*, 603 U.S. 480 (2024) ........ 11

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ........ *passim*

*Lamie v. United States Tr.*, 540 U.S. 526 (2004) ........ 7

*Public Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ........ 24, 30

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) ........ 8

**CASES (continued): PAGE**

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) ............................... 22

*Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022) ............................ 22

*United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich.),
*aff'd*, 179 F.4th 470,
*reh'g en banc denied*, 187 F.4th 462 (6th Cir. 2026) ............. *passim*

*United States v. Powell*, 379 U.S. 48 (1964) ..................................... 13-15

*United States v. Sturm, Roger & Co.*, 84 F.3d 1 (1st Cir. 1996) ............ 15

*United States Dep't of Just. v. Tax Analysts*,
492 U.S. 136 (1989) ............................................................... 4

*Voter Reference Found., LLC v. Torrez*,
160 F.4th 1068 (10th Cir. 2025) .............................................. 10-11

**CONSTITUTION:**

U.S. Const. Art. VI, Cl. 2 ............................................................... 30

**STATUTES:**

Civil Rights Act of 1960 (CRA)
52 U.S.C. 20701 ............................................................... *passim*
52 U.S.C. 20702 ............................................................... 11
52 U.S.C. 20703 ............................................................... *passim*
52 U.S.C. 20704 ............................................................... 29, 31
52 U.S.C. 20705 ............................................................... 14

Civil Rights Act of 1964
52 U.S.C. 10101(a)(2)(B) ................................................. 8
52 U.S.C. 10101(a)(2)(C) ................................................. 9

**STATUTES (continued):** **PAGE**

Help America Vote Act of 2002 (HAVA)
52 U.S.C. 21083(a)(2)(i)-(ii) .......... 19
52 U.S.C. 21083(a)(4) .......... 19-20
52 U.S.C. 21083(a)(5)(A)(i) .......... 20
52 U.S.C. 21111 .......... 21

Internal Revenue Code (IRC)
26 U.S.C. 7602(a)(1) .......... 14
26 U.S.C. 7605(b) .......... 13-14

Privacy Act of 1974
5 U.S.C. 552a(e)(4) .......... 27
5 U.S.C. 552a(e)(7) .......... 26

**REGULATIONS:**

28 C.F.R. 0.50(a) .......... 27-28

68 Fed. Reg. 47,610 (Aug. 11, 2003) .......... 27-29

70 Fed. Reg. 43,904 (July 29, 2005) .......... 27

82 Fed. Reg. 24,147 (May 25, 2017) .......... 27

**MISCELLANEOUS:**

*Black's Law Dictionary* (8th ed. 2004) .......... 28

# INTRODUCTION

Accurate voter rolls are an essential precondition for a verifiable and trustworthy elections process. The Department of Justice (DOJ) seeks to obtain New Hampshire's statewide voter registration list (SVRL) to ensure that New Hampshire is conducting its federal elections in a manner that will ensure the public of a trustworthy process. The DOJ is not doing anything particularly new. The DOJ's request for the State's SVRL is a lawful exercise of its authority under Title III of the Civil Rights Act of 1960 (CRA), and it is made for the lawful purpose of ensuring the State's compliance with the list maintenance requirements of the Help America Vote Act of 2002 (HAVA).

This Court should reverse and remand because both grounds on which the district court relied in dismissing the DOJ's Title III claim are meritless. First, the district court erred in concluding that the SVRL is not a record or paper that Title III requires the Secretary to retain and preserve and to produce upon the DOJ's written demand. U.S. Br. 16-33.[1]

[1] "U.S. Br. __" refers to the page numbers of the United States' Opening Brief filed with this Court. "Scanlan Br. __" refers to the page numbers of New Hampshire's Response Brief filed with this Court. "Kurk Br. __" refers to the page numbers of the Response Brief filed with this Court by Neal Kurk, Robert Perry, Louise Spencer, and Christopher Cole

Second, the court erred in concluding that the DOJ's demand for election records failed to state an adequate basis. U.S. Br. 33-40. Defendants' arguments on appeal reiterate the district court's mistakes, and their proposed alternative bases to affirm lack merit and should be rejected. This Court should reverse and remand with instructions directing the district court to compel Secretary Scanlan to produce the requested SVRL to the DOJ forthwith.[2]

## ARGUMENT

### I. The DOJ's demand for an electronic, unredacted copy of New Hampshire's SVRL satisfied Title III's requirements.

Title III of the CRA imposes a "sweeping" obligation on election officials, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962), to "retain and preserve" election records that "come into [their] possession," 52

(Kurk defendants). "Kousser, et al. *Amicus* Br." refers to the *amicus* brief filed by J. Morgan Kousser, Orville Vernon Burton, and James Peyton McCrary. "App. __" refers to the page numbers of the Appendix the United States filed with its Opening Brief.

[2] A district court has "set[] aside and vacate[d] DOJ's" so-called "Voter List Maintenance Policy." *Common Cause v. United States Dep't of Just.*, No. 26-1352 (SLS), 2026 WL 3033772, at *36 (D.D.C. Oct. 9, 2026). The DOJ has "has appealed [this] decision" and sought "a stay of th[e] decision pending appeal." Motion to Stay at 2, *Common Cause*, *supra* (Oct. 16, 2026) (No. 26-1352). The "DOJ does not interpret [that] decision as pretermitting or requiring dismissal of ongoing" appeals, including this one, related to "obtain[ing] voter rolls." *Id.* at 13.

U.S.C. 20701, and to disclose them to the Attorney General upon his written demand, 52 U.S.C. 20703. For the reasons the United States sets forth in its Opening Brief (at 15-52), the CRA compels Secretary Scanlan to disclose New Hampshire's unredacted SVRL to the DOJ. Defendants' arguments to the contrary miss the mark.

### A. New Hampshire's SVRL is a record or paper that Title III requires the State to retain and preserve and to produce upon the Attorney General's demand.

1. Section 301 of the CRA requires an election official to "retain and preserve, for a period of twenty-two months from the date of any" covered election, "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701. Defendants argue that because New Hampshire's SVRL was created by election officials, it does not "come into" their possession as Section 301 requires. Scanlan Br. 35-36; Kurk Br. 24-36.

Defendants are wrong. As the United States explained in its Opening Brief (at 18-20, 22), dictionary definitions contemporaneous with the CRA's passage and relevant precedent indicate that Congress used the phrase "come into . . . possession" in Section 301 not to impose

an unwritten carve-out for records or documents that are self-generated, but to focus on *how* and *when* the officer gains possession of the records or documents in the first instance.[3] When officers within Secretary Scanlan's office aggregate individual voter records into an SVRL, they get or acquire a new document and retain it within their control—thus coming into possession of the SVRL. *See United States Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 145 (1989) ("By control we mean that the materials have come into the agency's possession in the legitimate conduct of its official duties.").[4]

Though a panel of the Sixth Circuit disagreed with the United States' argument, *United States v. Benson*, 179 F.4th 470, 478-482

[3] New Hampshire insists (Br. 37) that the statute already lays out the relevant temporal limit by specifying that the duty to retain and preserve documents expires 22 months after the relevant election. 52 U.S.C. 20701; *see also* Kurk Br. 32. The 22-month period only dictates when the duty ends, not when it begins; the duty begins when the officer comes into possession of the record or paper.

[4] Contrary to the Kurk defendants' contention (Br. 30), the Supreme Court used the phrase "come into the agency's possession" to impose a requirement on all "requested materials"—both those "create[d]" by the agency and those "obtain[ed]" from an outside source. *Tax Analysts*, 492 U.S. at 144-145 (citation omitted); *accord United States v. Benson*, 187 F.4th 462, 471 (6th Cir. 2026) (Griffin, J., dissenting) (observing that *Tax Analysts* was "discussing a category of records that expressly included agency-created documents").

(*Benson II*), *reh'g en banc denied*, 187 F.4th 462 (6th Cir. 2026) (*Benson III*), a majority of the judges on the Sixth Circuit concluded that an election officer in Secretary Scanlan's position "comes into . . . possession" of an SVRL, *Benson III*, 187 F.4th at 464-465 (Murphy, J., concurring); *id.* at 470-474 (Griffin, J., dissenting); *id.* at 478-479 (Thapar, J., dissenting). There is no "external-source limitation" in the text. *Benson II*, 179 F.4th at 485 n.3 (Nalbandian, J., dissenting); *Benson III*, 187 F.4th at 470-471 (Griffin, J., dissenting). And even if there were, Secretary Scanlan would have come into possession of the SVRL upon entering office or receiving the SVRL from other election officers. *Benson III*, 187 F.4th at 465 (Murphy, J., concurring); *id.* at 472-473 (Griffin, J., dissenting); *id.* at 478-479 (Thapar, J., dissenting).

2. The Kurk defendants rely on a metaphor from the Sixth Circuit panel majority in *Benson II*. Kurk Br. 25-26. The panel explained that a baker who bakes a cake (*i.e.*, the SVRL) "might have 'come into' possession of the purchased ingredients" (*i.e.*, underlying voter records) but did not "'come into' possession of a cake she baked with those ingredients." Kurk Br. 25-26 (quoting *Benson II*, 179 F.4th at 479). But even accepting their interpretation of "comes into possession," Secretary

Scanlan is not a baker in this hypothetical. Rather, he oversees other bakers. So "the rule becomes that a baker comes into possession of a cake delivered from another bakery but not of a cake handed to her by another baker working in the same bakery." *Benson III*, 187 F.4th at 473 (Griffin, J., dissenting). Defendants, in other words, draw "an organizational boundary" requirement. *Ibid.* "Yet nothing in § 20701 draws that distinction." *Ibid.*

The Kurk defendants contend (Kurk Br. 33) that, by looking at individual officers rather than the State as a whole, the United States invokes an "employee-by-employee straw man." But the employee-by-employee analysis is compelled by the text of the statute itself, which imposes an individual duty on "[e]very officer of election," 52 U.S.C. 20701—"not a general duty on the entire" State. *Benson III*, 187 F.4th at 465 (Murphy, J., concurring). If the resulting employee-by-employee approach appears "strange" (Kurk Br. 33 (citation omitted)), the fault lies with defendants' external-source limitation. And regardless of whether the SVRL is "transfer[red] from one election officer to another" (Kurk Br. 34), Secretary Scanlan at least came into possession of the SVRL when

he came into office, *Benson III*, 187 F.4th at 465 (Murphy, J., concurring).[5]

The Kurk defendants further contend that the phrase "come into" is "an odd selection of words" to convey Congress' intent for cover records generated by election officials. Kurk Br. 29-30 (citation omitted). The words chosen are broad enough to include both those documents that are self-generated and those from an outside source. U.S. Br. 18-24. And even if Congress could have chosen clearer alternative phrasing, that would not necessarily render the meaning of the statute any less plain. *See Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004). Indeed, the absence of any origin source in the phrase "come into . . . possession" provides strong evidence of Congress' intent that Section 301 encompass *any source* from which an official could come into possession of the relevant record.

3. No more persuasive is defendants' appeal to the example documents listed in Section 301: "any application, registration, payment

[5] Because the continuously updated SVRL has continued to be a record relating to the registration for each federal election since that time, Secretary Scanlan's duty under Section 301 to retain and preserve that list has likewise continued. 52 U.S.C. 20701.

of poll tax, or other act requisite to voting." 52 U.S.C. 20701. First, defendants argue that this list of records and papers is evidence that the statute covers only documents that third parties submit to election officials. Scanlan Br. 35-36; Kurk Br. 26-27. Even assuming that the example documents are all records that election officials receive rather than create, the statutory text goes well beyond those example documents by requiring retention and preservation of all records and papers "*relating to*" any of those examples. 52 U.S.C. 20701 (emphasis added).

The Kurk defendants then turn to another statute, the Materiality Provision of the Civil Rights Act of 1964, which similarly refers to "any record or paper relating to any application, registration, or other act requisite to voting." Kurk Br. 27 (emphasis omitted) (quoting 52 U.S.C. 10101(a)(2)(B)). That text is self-evidently not restricted to "application forms" as they suggest (*ibid.*), nor did the Eleventh Circuit suggest as much in commenting on what "[t]his provision was intended to" do, generally. *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003) (quoted at Kurk Br. 27). Indeed, the next subparagraph entitles an applicant to "a certified copy of the [literacy] test and of the answers given" upon a

"request made within the period of time during which records and papers are required to be retained and preserved pursuant to title III." 52 U.S.C. 10101(a)(2)(C). Because a state-provided literacy test would be created by state officials, that requirement presupposes that officials retain documents they create pursuant to the CRA.

4. The Kurk defendants then turn to history and argue that, unlike documents submitted by voters to election officials, voter rolls were already available to the DOJ in most States in 1960. Kurk Br. 34-35. In light of the flagrant obstinance and resistance by various States to which Congress was reacting in passing the CRA (Kurk Br. 35; Kousser, et al. *Amicus* Br. 9-16), it beggars belief that Congress drew Title III to exclude the State-created records needed to uncover discriminatory practices and merely relied on a continued right of access under state law given their previous resistance. *See Benson III*, 187 F.4th at 481 (Thapar, J., dissenting) ("[T]he panel majority's reading of Title III leaves the Attorney General with a futile system that Congress never designed."). The Kurk defendants fail to explain how voter applications, on their own, could have demonstrated discrimination absent the notations or

registration rolls *created by election officials showing* whether those applications were accepted or rejected.

5. Finally, defendants mistakenly contend that interpreting Section 301 to require retention and preservation of an SVRL database that must be constantly altered to comply with HAVA would be "impractical to the point of impossible and patently absurd" (Scanlan Br. 37-38) and would "require the impossible" (Kurk Br. 27-28 (citation omitted)). An election officer can properly retain and preserve an SVRL by updating it accurately as required by HAVA without creating a new static version of the database with every single edit. U.S. Br. 32-33 (citing *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1084-1085 (10th Cir. 2025)). Though *Torrez* involved the NVRA's use of the word "maintain" rather than the CRA's "retain and preserve" (Kurk Br. 28 n.11), the verbs carry materially similar definitions, *compare Torrez*, 160 F.4th at 1085 (defining "maintain"), *with* U.S. Br. 33 n.9 (collecting definitions for the CRA's terms).

No more persuasive is defendants' related argument that interpreting Section 301 to cover an SVRL would create a conflict with Section 302, which prohibits "willfully steal[ing], destroy[ing],

conceal[ing], mutilat[ing], or alter[ing] any record or paper" covered by Section 301, 52 U.S.C. 20702. Scanlan Br. 38 n.8, 39; Kurk Br. 27-29. Defendants fail to grapple with the associated words surrounding "alter" in Title III, which must be understood as "actions that, by their nature, impair the integrity or availability of records, documents, or objects." *Fischer v. United States*, 603 U.S. 480, 481 (2024); *Benson III*, 187 F.4th at 473 (Griffin, J., dissenting). Performing list maintenance under HAVA is thus not "alter[ing]" the SVRL at all, 52 U.S.C. 20702, but instead "retain[ing] and preserv[ing]" it, 52 U.S.C. 20701; *see Torrez*, 160 F.4th at 1085. And the statute's willfulness mens rea removes any doubt that a state official could be prosecuted for violating Section 302 by attempting to comply with HAVA. *See Bryan v. United States*, 524 U.S. 184, 191-192 (1998). Indeed, a majority of the Sixth Circuit's judges found Title III of the CRA could be harmonized with the list maintenance requirements of HAVA to capture the SVRL in some form or another. *See Benson III*, 187 F.4th at 467-468 (Murphy, J., concurring); *id.* at 473-474 (Griffin, J., dissenting); *id.* at 479 n.7 (Thapar, J., dissenting).

### B. Courts play a limited role in assessing the Attorney General's demand under Title III.

As a threshold matter, the federal court hearing on the DOJ's demand for federal election records is a "special statutory proceeding" in which the Attorney General need only make a "simple statement" that the state election official against whom an order of reproduction is sought has "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Lynd*, 306 F.2d at 225-226 (quoting 52 U.S.C. 20703 (formerly 42 U.S.C. 1974b)). "There is no place" for the State election official to challenge, or the court to review or require discovery regarding, "the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* at 226 (quoting 52 U.S.C. 20703 (formerly 42 U.S.C. 1974b)). Title III is satisfied so long as the Attorney General states in writing the basis and purpose of the demand, as happened here. U.S. Br. 37; *see also Benson III*, 187 F.4th at 480 (Thapar, J., dissenting) (observing the lack of any "authority or judicially manageable standards to guide [a court's] review" of the "adequacy of the Attorney General's demand").

1. *Lynd* is the on-point precedent and makes clear that courts are

not free to second-guess "the factual foundation for, or the sufficiency of, the Attorney General's statement of the basis and the purpose contained in the written demand." 306 F.2d at 226 (citation and internal quotation marks omitted). Though the Kurk defendants attempt to distinguish *Lynd* on factual grounds—namely, that the Attorney General's demand in that case stated a proper basis and purpose, related to an investigation into voting-related racial discrimination (Kurk Br. 23)—these distinctions say nothing about whether proceedings called for by the statute are or are not summary in nature.

2. The Kurk defendants mistakenly argue that *United States v. Powell*, 379 U.S. 48 (1964), which involved an Internal Revenue Service (IRS) administrative summons under the Internal Revenue Code (IRC), overrides *Lynd* and compels application of the Federal Rules of Civil Procedure. Kurk Br. 20-22. The Supreme Court explained in *Powell* that judicial inquiry was appropriate to determine "if the summons had been issued for an improper purpose," 379 U.S. at 58, because the IRC prohibits the IRS from subjecting a taxpayer "to unnecessary examination or investigations," *id.* at 52-53 (quoting 26 U.S.C. 7605(b)), and limits the IRS to documents that "may be relevant or material" to its

"inquiry," 26 U.S.C. 7602(a)(1). The absence of similar statutory language limiting the Attorney General's authority to compel records under the CRA readily distinguishes *Powell*.

The Kurk defendants nevertheless argue that *Powell*—and its mandate for application of the Federal Rules—controls because the CRA, like the IRC, authorizes the Government to seek judicial enforcement of its phrase "by appropriate process," 52 U.S.C. 20705, without setting forth the procedure for a court to follow. Kurk Br. 20. Not so. Contrary to their contention, the IRC's limitation on the Government to demand documents that "may be relevant," does not "authorize[] the judicial review conducted below" (Kurk Br. 20 (citation omitted) but rather distinguishes *Powell*. Another significant distinction is the lack of statutory language imposing a "necessary" requirement on a Title III demand. *Cf. Powell*, 379 U.S. at 52-53 (quoting 26 U.S.C. 7605(b)). Because the CRA does not contain similar statutory prohibitions to those in *Powell* limiting the DOJ's authority to demand election records, there are no grounds upon which New Hampshire can mount a challenge to the DOJ's demand under *Powell*.

3. Equally misplaced is the Kurk defendants' reliance (Kurk Br. 21-

23) on other administrative-subpoena precedents. Administrative-subpoena statutes authorize the government to demand a wide variety of records and testimony from any person so long as it is relevant or material to one of the agency's authorized purposes. *See, e.g.*, *Powell*, 379 U.S. at 53 n.12. These precedents are also grounded in the Fourth Amendment. *See, e.g.*, *United States v. Sturm, Roger & Co.*, 84 F.3d 1, 3-4 (1st Cir. 1996). The relevance limitation makes sense for administrative subpoenas, which are used to compel individuals and corporations to produce what could otherwise be an unlimited scope of documents.

Not so here. First, because the United States has requested state documents from a state official—not an individual's private papers—Fourth Amendment concerns are not implicated. Second, because 52 U.S.C. 20703 itself limits any request to a specific set of documents, there is no need, and no statutory authorization, for a relevance inquiry. Finally, unlike other subpoena statutes, 52 U.S.C. 20703 does not limit the purpose of any demand; a statement of purpose must simply be provided in the demand. *Benson III*, 187 F.4th at 467 (Murphy, J., concurring). There is consequently no statutorily prescribed set of purposes to which courts could demand relevance. *See id.* at 480 (Thapar,

J., dissenting) (listing "meaningful[] differen[ces]" between an IRS summons and a Title III demand).

### C. The DOJ provided a valid basis for its demand.

To satisfy the requirement that a Title III demand for federal election records possess an adequate basis, the Attorney General need only "identify in a general way the reasons for his demand," such as that it "was made for the purpose of investigating *possible* violations of a Federal statute." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (emphasis added; citation omitted). The court need only resolve "whether the written demand has been made" and "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Lynd*, 306 F.2d at 226. Because that occurred in this case, the district court erred by requiring that the Attorney General further allege the factual basis for his demand. U.S. Br. 38-40.

1. The United States did not waive its argument that one can infer New Hampshire's possible HAVA violation as the basis of the DOJ's

demand. *Cf.* Scanlan Br. 21-23.[6] The United States argued repeatedly below that the Secretary's responses to questions "about New Hampshire's compliance with HAVA standards . . . did not satisfy the Attorney General's investigation" into HAVA compliance, so that the Attorney General sought the SVRL for "assurances that the law is being followed." App. 149; *see* App. 150-153; *see* App. 110 n.8 (Aug. 18 Letter). The natural import of these arguments is that New Hampshire's possible HAVA violations formed the basis for the Attorney General's demand.

2. Defendants argue that the DOJ's demand was deficient because it stated a purpose but no basis, contrary to Section 303's requirement that the demand contain a separate basis and purpose. Scanlan Br. 19-20; Kurk Br. 36. This argument is unavailing. Section 303 requires that

[6] The Kurk defendants allege (Kurk Br. 38-39) that the reference to 52 U.S.C. 21083(b)(4)(A) and (B) in the DOJ's Title III demand in its August 18 Letter "makes no sense" because this statutory provision concerns mail-in registration forms required by the NVRA, not HAVA's list maintenance requirements. This reference appears to be a typographical error, as the United States intended to cite 52 U.S.C. 21083(a)(4)(A) and (B). This error did not prejudice defendants, however, as the correct provision was referenced in the DOJ's June 25 Letter (App. 41), Secretary Scanlan's July 25 Response Letter (App. 48), the DOJ's Complaint (App. 24, 27-28, 30, 35), and the DOJ's Memorandum in Opposition to Defendants' Motions to Dismiss (App. 96, 119).

a demand "contain a statement of the basis and the purpose therefor." 52 U.S.C. 20703. To repeat, the touchstone of a sufficient Title III demand under *Lynd* is "reasonable notice." Nothing in Section 303 mandates a formalistic incantation of the words "basis" and "purpose" to pass statutory muster where, as here, the statement provided the election officer with reasonable notice of the basis of the United States' demand—that New Hampshire's list maintenance procedures may violate HAVA—and the clear statutory authority for the demand (the CRA). U.S. Br. 38.

Along similar lines, defendants argue that the DOJ's demand failed to state an adequate basis because it omitted the underlying facts supporting the demand. Scanlan Br. 19-20; Kurk Br. 37. This argument too misses the mark. In defending the district court's grafting of a factual-basis requirement on to Section 303's minimal basis-and-purpose requirement, the Kurk defendants cite *Lynd* and argue that the DOJ originally understood a Title III demand to require a factual basis. The prior recitation of a factual basis merely shows that the demand *may* include such information. U.S. Br. 39. Indeed, the factual bases in these cited early cases (which the Kurk defendants fully endorse (Kurk Br. 23))

were vague and conclusory, and the Fifth Circuit made clear it would not scrutinize them. *See Lynd*, 306 F.2d at 229 & n.6.

### D. The DOJ's stated purpose of ascertaining New Hampshire's compliance with HAVA was sufficient.

The DOJ also stated a proper purpose for its Title III demand for New Hampshire's unredacted SVRL: "to ascertain New Hampshire's compliance with the list maintenance requirements of HAVA." App. 53. "[N]othing in the [CRA's] text . . . limits the purposes for which the DOJ may request the records." *Benson III*, 187 F.4th at 467 (Murphy, J., concurring). None of the defendants' rejoinders have merit.

1. As a threshold matter, defendants argue that New Hampshire is exempt from HAVA's list maintenance requirements that the DOJ invoked. Kurk Br. 38-40; Scanlan Br. 30. Not so. As the United States explained in its Opening Brief (at 40-42), HAVA only exempts New Hampshire from the NVRA's list maintenance requirements described in 52 U.S.C. 21083(a)(2)(A)(i)-(ii). New Hampshire must still comply with HAVA's mandate that a "State election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly." 52 U.S.C. 21083(a)(4). So too, New Hampshire

may not accept any "application for voter registration" without appropriate HAVA identifiers. 52 U.S.C. 21083(a)(5)(A)(i).

Contrary to defendants' contention (Kurk Br. 40), the United States cannot assess New Hampshire's compliance with this section merely by referring to State statutes. On their own, the statutes provide no indication whether they "ensure that voter registration records in the State are accurate and are updated regularly." 52 U.S.C. 21083(a)(4); *see also* pp. 23-24, *infra*. Moreover, nothing in the State's statutes informs the United States whether the State has improperly accepted registration applications lacking HAVA identifiers. 52 U.S.C. 21083(a)(5)(A)(i). Because administrative subpoena precedents do not apply here, *see* pp. 15-16, *supra*, the United States need not show that New Hampshire's unredacted SVRL is relevant to its determination of HAVA compliance. Even if such precedents applied, the United States need only show that the SVRL is not "plainly incompetent or irrelevant to any lawful purpose." *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943). Ensuring New Hampshire's compliance with HAVA's identifier requirement is enough to satisfy that low standard.

2. The Kurk defendants further err in contending that Title III does not authorize the DOJ to demand records to assess a State's compliance with HAVA's list maintenance requirements because the separate enforcement mechanisms of that statute, *see* 52 U.S.C. 21111, provide the exclusive authority for the DOJ to seek records for that purpose. Kurk Br. 35-36, 40-44. The DOJ's authority to enforce HAVA does not operate in a vacuum, separate from the Attorney General's preexisting Title III investigative authority. There is a "strong presumption" that these statutes, which both concern voting rights, "can coexist harmoniously" and a court's duty is to "giv[e] effect to both." *Department of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63-64 (2024) (citation omitted). The lack of a tool for records inspection by the Attorney General in HAVA comparable to 52 U.S.C. 20703 *supports* the DOJ's position because it is implausible that Congress intended for the Attorney General to lack the ability to inspect complete records so pertinent to his enforcement authority under HAVA. *See* U.S. Br. 30-32.

3. Defendants further contend that the Attorney General may only invoke Title III for the purpose of investigating possible violations of individual voting rights. *See* Scanlan Br. 24-26, 32-34; Kurk Br. 44-48.

Yet they offer no textual basis for these limitations, instead citing Title III's historical context. Scanlan Br. 24-26; Kurk Br. 45-46. That is incorrect because "nothing in the statute's text . . . limits the purposes for which the DOJ may request the records." *Benson III*, 187 F.4th at 467 (Murphy, J., concurring).

In any event, it is both unsurprising and unilluminating that Title III's legislative history, upon which defendants construct their historical-context argument, focuses on racial discrimination in voting. Title III was passed to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General" to thwart "public and private interference with the right to vote on racial grounds." *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966); U.S. Br. 3. The legislative history focuses on racial discrimination as a permissible purpose for Title III investigations because that was the primary concern of the day. *See* U.S. Br. 3. But courts "have no warrant to elevate vague invocations of statutory purpose over the words Congress chose." *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 463 (2022). And since the CRA, other election statutes have been passed against the backdrop of Title III, and nothing in Title III

suggests that enforcement of these later statutes cannot provide a proper "purpose" under 52 U.S.C. 20703.

4. The Kurk defendants argue that New Hampshire's unredacted SVRL is not "reasonably relevant" to the DOJ's claimed interest in assessing the State's compliance with HAVA's list maintenance requirements. Kurk Br. 37-38 (citation omitted). Not so. The United States need not show relevance because its Title III demand is not governed by administrative subpoena precedents. *See* pp. 15-16, *supra*. In any event, the United States' Complaint plausibly alleged that the DOJ needed a registrant's state driver's license number or the last four digits of the registrant's social security number to assess compliance, because HAVA requires that information to accept or process a voter registration application. U.S. Br. 48-49.

Defendants nevertheless contend that New Hampshire's unredacted SVRL "would shed little light on whether New Hampshire complied with any list-maintenance obligations." Kurk Br. 38; *see also* Scanlan Br. 30-32. The personal information of individuals the DOJ seeks is certainly relevant or helpful to determining whether a State is making the HAVA-required "reasonable effort" attempt to maintain a

voter list free of ineligible individuals. While HAVA does not demand perfection, the presence of significant, preventable, or numerous inaccuracies in the voter rolls may suggest that a State is not fulfilling its obligations. Because "whether voter registration rolls are accurate and current cannot be determined without inspecting the [SVRL]," *Public Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 49 (1st Cir. 2024), the United States needs access to the SVRL and the identifying information required by HAVA to ensure that ineligible people are not on the list.

5. Finally, New Hampshire erroneously argues that the Attorney General's stated purpose of assessing New Hampshire's compliance with HAVA's list maintenance requirements is pretextual and that his true motive is to share this electronic data with other federal agencies to find individual voters who may be voting illegally. Scanlan Br. 27-32. Defendants may not challenge the factual accuracy of the basis and purpose for the DOJ's demand. U.S. Br. 37-38, 48. Defendants also may not argue that the DOJ's demand is in reality motivated by an improper purpose unless the standards for judging administrative subpoenas apply here, which they do not. *See* pp. 15-16, *supra*. And even if an inquiry into pretext were appropriate, defendants' allegations of pretext constitute

speculations that fall well short of "firm evidence of bad faith." U.S. Br. 50-52.

As an initial matter, New Hampshire's allegation of bad faith "goes to the truth of the DOJ's allegations and cannot be addressed on a motion to dismiss." *United States v. Benson*, 819 F. Supp. 3d 753, 767 (W.D. Mich. 2026). Indeed, the Kurk defendants concede as much. Kurk Br. 52-53. In any event, New Hampshire's claim also fails on the merits. As evidence of pretext, it cites an opinion by the DOJ's Office of Legal Counsel justifying the DOJ's Title III authority to demand unredacted SVRLs from States in response to the President's Executive Order to identify individuals who may be voting illegally. Scanlan Br. 28-32. Because this Opinion is consistent with the demand's stated purpose of assessing a State's compliance with HAVA, it is not evidence, much less firm evidence, of a pretextual motive. For the same reason, there is no basis for remanding for discovery on pretext. *See* Kurk Br. 52-53 (arguing that DOJ intends to assess whether the SVRL has individuals who have unlawfully registered).[7]

---

[7] The Kurk defendants point out (Kurk Br. 53) that the Department of Homeland Security was enjoined from using the Systematic Alien

## II. The DOJ's demand for an electronic, unredacted copy of New Hampshire's SVRL does not violate federal or state privacy laws.

The district court did not reach defendants' privacy-related arguments, but the Kurk defendants argue that the district court's opinion can be affirmed on those bases. Kurk Br. 48-52.[8] The court should reject these arguments.

### A. The DOJ's demand complied with the Privacy Act.

The Kurk defendants argue that the DOJ failed to comply with the maintenance provision's requirement that it publish a System of Records Notice (SORN) in the Federal Register before "establish[ing] or

---

Verification for Entitlements (SAVE) program to assess whether voters had lawfully registered. That injunction has since been stayed, *Department of Homeland Sec. v. League of Women Voters*, No. 26A308, 2026 WL 2879700 (S. Ct. Sept. 25, 2026) (per curiam), although the DOJ will not make use of the SAVE system so long as the *Common Cause* order remains in place, *see* note 2, *supra*.

[8] New Hampshire and Kurk defendants suggest the United States requests remand regarding its compliance with the Privacy Act. Scanlan Br. 41; Kurk Br. 53. To the contrary, the United States merely acknowledged (U.S. Br. 54) that the district court can tailor its order of relief to account for any additional information protected by the 5 U.S.C. 552a(e)(7), but defendants have identified no such additional information. *Cf. Kennedy v. Lynd*, 306 F.2d 222, 230 (5th Cir. 1962) (acknowledging district courts' authority to issue protective orders in enforcing 52 U.S.C. 20705 (formerly 42 U.S.C. 1974d)).

revis[ing]" a "system of records," 5 U.S.C. 552a(e)(4). Kurk Br. 49-52. An electronic, unredacted copy of New Hampshire's SVRL is covered by the existing SORN titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47,610, 47,611 (Aug. 11, 2003); 70 Fed. Reg. 43,904 (July 29, 2005); and 82 Fed. Reg. 24,147 (May 25, 2017). U.S. Br. 54-56.

The Kurk defendants contend that the SORN "does not even *mention* the NVRA, HAVA, or the CRA." Kurk Br. 50-51. But as explained (U.S. Br. 54-55), the SORN explicitly cross-references federal regulations granting the Civil Rights Division responsibility for "[e]nforcement of all Federal statutes affecting civil rights, including those pertaining to elections and voting," 28 C.F.R. 0.50(a).

The Kurk defendants' accusation that the SORN "does not disclose what the DOJ intends to do with the voter data it collects" (Kurk Br. 51) incorrectly faults the DOJ for not meeting a heightened level of notice not required by the Privacy Act. The Act requires the United States to disclose "each routine use of the records . . . and the purpose of such use." 5 U.S.C. 552a(e)(4). Again, the United States

made clear that the records will be used to enforce civil-rights statutes, "including those pertaining to elections and voting." 28 C.F.R. 0.50(a).

No more persuasive is the Kurk defendants' argument that the SORN's coverage of "[s]ubjects of investigations, [and] victims," 68 Fed. Reg. at 47,611, cannot be read to cover New Hampshire registered voters. Kurk Br. 51. Their overwrought suggestion (Kurk Br. 51) that designating voters as "subject[s]" would "trigger a well-advised recipient to seek criminal defense counsel" mistakenly conflates "targets," who are individuals for whom the prosecutor or grand jury "has substantial evidence linking him or her to the commission of a crime," and "subjects," *American Oversight v. United States Dep't of Just.*, 45 F.4th 579, 582 n.2 (2d Cir. 2022) (citation omitted). *See* U.S. Br. 55-56.[9] And the Kurk defendants do not explain why eligible voters are not potential "victims" of HAVA non-compliance, 68 Fed. Reg. at

[9] The *Common Cause* court disagreed because the *Justice Manual* (cited at U.S. Br. 56) uses the term "subject" in the context of grand-jury proceedings. *Common Cause v. United States Dep't of Just.*, No. 26-1352 (SLS), 2026 WL 3033772, at *29 (D.D.C. Oct. 9, 2026). A grand-jury investigation is merely one example of the term's broad ordinary meaning, *see Subject*, Black's *Law Dictionary* 1465 (8th ed. 2004) ("[t]he matter of concern").

47,611, when their votes may be diluted by that non-compliance. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021).

Lastly, the Kurk defendants assert that the SORN covers only "case files, matters, memoranda, correspondence, studies, and reports" relating to enforcement of civil rights laws and therefore does not encompass the SVRL. Kurk Br. 51 (quoting 68 Fed. Reg. at 47,611). This language is not limited to "run-of-the-mill files," *ibid.*, but extends to all "matters" relating to the enforcement of civil-rights laws.

### B. Federal law preempts any contrary New Hampshire privacy law.

Congress enacted broad regulations over the conduct of federal elections in the two statutes at issue in this litigation pursuant to its authority under the Elections Clause. U.S. Br. 60-63. Title III imposes a "sweeping" obligation on election officials to preserve and, on demand of the Attorney General, to produce registration records pertaining to federal elections, *Lynd*, 306 F.2d at 226, and imposes its own privacy protections for such under Section 304, *see* 52 U.S.C. 20704. To the extent New Hampshire privacy law poses a barrier to the Attorney General's

demand under Title III for New Hampshire's unredacted SVRL, the CRA preempts that state law. *See* U.S. Const. Art. VI, Cl. 2.[10]

The Kurk defendants contend that there is no conflict between federal and state law because Title III does not require the disclosure of personal and sensitive voter information. Kurk Br. 48-49. To this end, they insist that the interpretation of Title III's coverage should be guided by the interpretation of the public-inspection provision of the later-enacted NVRA, which allows redactions of personal voter information. Kurk Br. 49. There is good reason why the public should not have access to the personal information of individuals, as they have neither the need for such information nor the mandate or means to protect it from unwarranted disclosure. But the concerns regarding public disclosure that led this Court to allow redactions in the NVRA context, *see Public Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 55-56 (1st Cir. 2024), have no analogue in the context of the Attorney General's demand under the

---

[10] New Hampshire argues that its state privacy law is not only consistent with, but in fact is authorized by, HAVA. Scanlan Br. 23-24 n.4. This argument is unavailing. As explained above, *see* pp. 23-24, *supra*, the United States needs an unredacted SVRL to determine whether New Hampshire is complying with HAVA's list maintenance requirements.

CRA, in light of the Attorney General's need for this information to investigate possible violations of voting laws (*see* U.S. Br. 30-32), and the limitation on his further disclosure of that information, 52 U.S.C. 20704.

Contrary to the Kurk defendants' contention (Br. 49), *Lynd* does not support their argument. The Fifth Circuit's observation that the Attorney General demanded "public records which ought ordinarily to be open to legitimate reasonable inspection," as opposed to "confidential, private papers and effects," *Lynd*, 306 F.2d at 231, was not a description of the scope of Title III. Rather, the court explained that the district court's "delay" in allowing "inspection and copying" was unwarranted given the nature of the records sought in that case. *Id.* at 230-231. If Title III were limited to "public records" that contained no sensitive information, then there would be no need for Title III's non-disclosure provision. 52 U.S.C. 20704.[11]

---

[11] The Kurk defendants further contend that "since driver's license numbers and partial social security numbers were not required to be provided on registration forms until 2002[.] Congress's purpose in enacting the CRA could not possibly have extended to requiring disclosure of such information" (Kurk Br. 49 (internal citation omitted)). Congress's "expectations" of how a statute may be applied in light of present circumstances do not control the meaning of the statute. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 683 (2020).

## CONCLUSION

For the reasons stated in this brief and the United States' Opening Brief, this Court should reverse and remand with instructions to order Secretary Scanlan to immediately produce the requested unredacted SVRL.

Respectfully submitted,

JESUS A. OSETE
Acting Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3803

Date: November 6, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because the brief contains 6499 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
Attorney

Date: November 6, 2026

## CERTIFICATE OF SERVICE

I certify that on November 6, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
Attorney